**Petition for Writ of Mandamus Denied and Opinion filed December 28, 2018.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

**NO. 14-18-01046-CV**

---

**IN RE UNION PACIFIC RAILROAD COMPANY, Relator**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-25150**

---

## OPINION

On December 5, 2018, relator Union Pacific Railroad Company filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Ursula A. Hall, presiding judge of the 165th District Court of Harris County, to grant relator's motion to dismiss and award relator its attorneys' fees and

costs. Because relator has not shown the trial court abused its discretion in denying the motion, we deny the petition for writ of mandamus.

## BACKGROUND

Three apartment complexes (Plaintiffs) sued the Union Pacific Railroad, the Harris County Flood Control District, and others for flood damages after the 2016 Tax Day flood and 2017 flooding associated with Hurricane Harvey. Plaintiffs alleged, among other things, that when Union Pacific built a railroad bridge across Greens Bayou it failed to restore Greens Bayou to its former state at the bridge crossing and/or did not keep the crossing in repair, resulting in Greens Bayou floodwaters backing up and contributing to the flooding of the apartment complexes. Plaintiffs amended their petition to also allege that Union Pacific was negligent in "failing to manage and maintain the vegetation, foliage, and debris that had accumulated within its right of way under the rail bridge at the Greens Bayou crossing."

Plaintiffs alleged that Union Pacific violated Texas Transportation Code section 112.057, which states:

(a) A railroad company may construct the company's road across, along, or on any stream of water, water course, street, highway, turnpike, or canal where the route of the company's railway intersects or touches the stream, water course, street, highway, turnpike, or canal.

(b) The railroad company shall:

(1) restore the stream, water course, street, highway, turnpike, or canal to its former state or to a state in which its usefulness is not unnecessarily impaired; and

(2) keep the crossing in repair.

Tex. Transp. Code Ann. § 112.057.

Union Pacific filed a motion to dismiss pursuant to Texas Rule of Civil Procedure 91a in which it alleged that Plaintiffs could not proceed with their suit because federal law expressly preempts duties under state law relating to interstate rail operations. Union Pacific claims the action is preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10501. The trial court denied Union Pacific's motion, and this petition followed.

## ANALYSIS

With certain exceptions not applicable here, to obtain mandamus relief, a relator must show both that the trial court clearly abused its discretion and that relator has no adequate remedy at law, such as an appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).

The Supreme Court of Texas has determined that mandamus is available to review the denial of a Rule 91a motion to dismiss. *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 880 (Tex. 2018), citing *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (reviewing denial of Rule 91a motion to dismiss on a petition for writ of mandamus).

Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought . . . [or] no reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1. Whether the dismissal standard is satisfied depends "solely on the pleading of the cause of action." Tex. R. Civ. P. 91a.6. We review a ruling on a Rule 91a motion de novo because the availability of a remedy under the facts alleged is a

question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). In conducting our review, we must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine whether the cause of action has a basis in law or fact. *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 183–84 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

To determine whether dismissal under Rule 91a is required in this case, we consider whether the pleadings, liberally construed according to the pleader's intent, allege facts that trigger federal preemption under the ICCTA. *See Sanchez*, 494 S.W.3d at 725. In their live pleading, Plaintiffs allege that Union Pacific violated section 112.057 of the Texas Transportation Code by failing to "[(1)] restore the stream water course to its former state or to a state in which its usefulness is not unnecessarily impaired; and [(2)] keep the crossing in repair." Plaintiffs further allege that Union Pacific failed to "maintain the vegetation, foliage, debris, and other obstructions" on the railroad property.

Union Pacific asserted in its motion to dismiss that the ICCTA expressly preempts Plaintiffs' state-law claims as a matter of law. The ICCTA section entitled "General Jurisdiction" states, in relevant part:

> (b) The jurisdiction of the [Surface Transportation] Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive.

Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. § 10501 (emphasis added).

In *Franks Investment Company v. Union Pacific Railroad Company*, 593 F.3d 404 (5th Cir. 2010), the Fifth Circuit explained that there are two types of ICCTA preemption: express and implied. The portion of section 10501 italicized above defines the scope of express ICCTA preemption. "For a state court action to be expressly preempted under the ICCTA, it must seek to regulate the operations of rail transportation." *Id.* at 413. To the extent remedies are provided under state or federal laws that have the effect of regulating rail transportation, they are preempted. *Id.* at 410.

Union Pacific notes that the ICCTA broadly defines the term transportation to include a "property [or] facility . . . of any kind related to the movement of passengers or property, or both, by rail" as well as services related to that movement. 49 U.S.C. § 10102(9). Because courts have held that bridges fall within this definition, Union Pacific contends that Plaintiffs' claims are expressly preempted.

The scope of the ICCTA express preemption provision is not as broad as Union Pacific contends. Of course, the Supremacy Clause of our Federal Constitution allows Congress to displace state law. *See* U.S. Const. Art. VI, cl. 2. Given the presumption that federal law does not supersede the States' historic police

powers unless it is Congress's manifest purpose to do so, however, courts ordinarily accept a plausible reading of an express preemption provision that disfavors preemption. *Franks*, 593 F.3d at 407. As the United States Court of Appeals for the Eleventh Circuit has explained, "Congress narrowly tailored the ICCTA pre-emption provision to displace only 'regulation,' i.e., those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, . . . while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Fla. E. Coast Ry. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001); *see also Burlington N. & Santa Fe Ry. v. City of Houston*, 171 S.W.3d 240, 247 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("state laws that constitute regulation of a railroad are preempted"). The Surface Transportation Board (STB)—the federal administrative agency charged with regulating rail transportation under the ICCTA—takes a similarly narrow view of the express preemption provision's scope. According to the STB, this provision categorically preempts only (1) state and local permitting or preclearance requirements that could be used to deny a railroad the ability to conduct certain operations or proceed with STB-authorized activities; and (2) state and local regulation of matters directly regulated by the STB, such as construction, operation, and abandonment of rail lines, railroad rates and service, and mergers and acquisitions. *See Franks*, 593 F.3d at 410–11.

Applying these tests and the Rule 91a standard to Plaintiffs' petition, we cannot conclude as a matter of law that Plaintiffs' claims would have the effect of managing or governing "the operations of rail transportation." *Franks*, 593 F.3d at 413. The principles of Texas law that Plaintiffs contend require Union Pacific to

restore and manage debris in the bayou under its bridge do not, on their face, require reconstruction of the bridge or govern the operation of trains moving passengers or property across the bridge.[1] Nor do the bayou underneath the bridge or the debris that allegedly accumulated there fall within the ICCTA's definition of "transportation." *See* 49 U.S.C. § 10102(9); *Emerson v. Kansas City So. Ry.*, 503 F.3d 1126, 1130 (10th Cir. 2007) (holding railroad's alleged failure to act to maintain drainage ditch adjacent to track was not an instrumentality related to movement of passengers or property or a service related to that movement, but rather a tort committed by a landowner who happens to be a railroad company). Finally, Union Pacific has not explained what "remedies" the ICCTA provides with respect to the matters at issue in this suit that should be deemed "exclusive and preempt the remedies" Plaintiffs seek under Texas law. 49 U.S.C. § 10501. For each of these reasons, the ICCTA does not expressly preempt Plaintiffs' state-law claims.

Union Pacific does point out that the Federal Railroad Administration (FRA) has a regulation concerning drainage under the roadbed, which requires railroads to maintain the drainage and keep it "free of obstruction, to accommodate expected water flow for the area concerned." 49 C.F.R. § 213.33. But the FRA is a separate

---

[1] Unlike in other cases cited by Union Pacific, Plaintiffs' allegations do not challenge "where and when railroads placed their railcars on their transportation lines or how they constructed those lines." *Griffioen v. Cedar Rapids & Iowa City Ry.*, 914 N.W.2d 273, 287 (Iowa 2018). In *Griffioen*, the court held the ICCTA preempted claims that a railroad was liable for flooding exacerbated when it positioned cars filled with rock on railroad bridges and failed to "build, maintain, inspect, and keep in good repair" bridges that collapsed. *Id.* at 288. And in *Waubay Lake Farmers Association v. BNSF Railway*, the court held on summary judgment that the ICCTA preempted a suit seeking to impose a duty on a railroad to cease operations and rebuild its track to incorporate a larger drainage culvert. No. 12-4179-RAL, 2014 WL 4287086, at *6 (D.S.D. Aug. 28, 2014),

federal agency that regulates rail safety under the Federal Railroad Safety Act (FRSA), while the STB regulates rail transportation under the ICCTA. *See Boston & Me. Corp. v. STB*, 364 F.3d 318, 321 (D.C. Cir. 2004) ("primary jurisdiction over railroad safety belongs to the FRA, not the STB"). The FRSA has its own preemption provision and savings clause, *see* 49 U.S.C. § 20106, and Union Pacific does not argue that the FRSA preempts Plaintiffs' claims (which do not rely on the FRA regulation). In any event, the ICCTA does not expressly preempt negligence claims based on an alleged failure to comply with FRA safety regulations. *See Tyrrell v. Norfolk So. Ry.*, 248 F.3d 517, 524 (6th Cir. 2001) (holding that because state regulation "has a connection with rail safety, . . . FRSA [rather than ICCTA] provides the applicable standard for assessing federal preemption"); *Smith v. CSX Transp., Inc.*, No. 3:13 CV 2649, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014).

As to implied preemption under the ICCTA, the Fifth Circuit has adopted a "fact-based test," noting that state-law actions can be preempted as applied if they have the effect of unreasonably burdening or interfering with rail transportation. *Franks*, 593 F.3d at 414. In some of the cases Union Pacific cites, courts applied aspects of this test to developed factual records. *E.g.*, *A & W Props., Inc. v. Kansas City S. Ry.*, 200 S.W.3d 342, 350 (Tex. App.—Dallas 2006, pet. denied).[2] Such a

---

[2] In *A & W*, the court concluded on summary judgment that an adjacent landowner's suit seeking to require a railroad to widen a culvert and bridge "would interfere with [railroad] operations" and were preempted. 200 S.W.3d at 350. The *A & W* court contrasted those facts with the *Rushing* case, in which an adjacent landowner's suit concerning flooding caused by a berm built to contain noise from railroad switching activities was held not directly related to those activities and therefore was not preempted. *Rushing v. Kan. City So. Ry.*, 194 F. Supp. 2d 493, 501 (S.D. Miss. 2001). From the face of Plaintiffs' petition, this case appears to be like *Rushing*, as Plaintiffs do not seek to alter Union Pacific's bridge.

fact-based review is inappropriate when reviewing a trial court's ruling on a Rule 91a motion to dismiss. *See Zheng*, 468 S.W.3d at 184. Union Pacific did not argue in its Rule 91a motion that implied ICCTA preemption forecloses Plaintiffs' claims, and we express no view on that issue.

Union Pacific has not shown it is entitled to mandamus relief. We therefore deny the petition for writ of mandamus.

PER CURIAM

Panel consists of Justices Busby, Brown, and Wise.