FILED IN
BUSINESS COURT OF TEXAS
BEVERLY CRUMLEY, CLERK
ENTERED
11/5/2025

2025 Tex. Bus. 44



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| LENSABL, INC. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 25-BC08B-0013 |
| | § | |
| RBH SPE ONE, LLC, ROBERT | § | |
| BYRNES HOLDINGS LLC, ROBERT | § | |
| BYRNES, JR., LAINIE K. BYRNES, R. | § | |
| JEFF BYRNES, III, MYSTI B. | § | |
| BYRNES, SARAH BYRNES, | § | |
| MATTHEW SAVOY, SABER CAPITAL | § | |
| LLC, and RAMON COSCOLLUELA, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

¶ 1     This opinion addresses a motion to dismiss filed September 22, 2025 by Defendants Robert Byrnes, Jr. ("Mr. Byrnes"), Lainie K. Byrnes, R. Jeff Byrnes, III, Mysti B. Byrnes, and Sarah Byrnes (collectively, "Byrnes Defendants"). The Motion, brought under Texas Rule of Civil Procedure 91a, challenges two causes of action—fraud and breach of contract—and one theory of derivative liability—

piercing the corporate veil. Plaintiff Lensabl, Inc. ("Lensabl") filed its Response on October 16, 2025, and the Court heard oral argument on October 23, 2025.

¶ 2    After considering the pleadings, briefs, oral arguments, and applicable law, the Court concludes the Motion should be **granted in part and denied in part**. Because the pleadings fail to state a legally cognizable claim for breach of contract against Mr. Byrnes or for veil piercing against the Byrnes Defendants, those claims are dismissed. The fraud claim against Mr. Byrnes, however, is adequately pleaded and will proceed.

## I.    BACKGROUND

¶ 3    This case arises from an acquisition agreement gone awry.

¶ 4    In 2023, Mr. Byrnes began exploring a possible acquisition of Lensabl, a web-based eyewear company. To pursue the deal, Byrnes engaged Ramon Coscolluela to negotiate on behalf of two of Mr. Byrnes's companies, RBH SPE ONE, LLC ("RBH SPE") and Robert Byrnes Holdings, LLC ("RBH") (together, "Purchasing Parties" or "the LLCs").

¶ 5    Lensabl alleges that during negotiations, Coscolluela—acting as Mr. Byrnes's agent—assured Lensabl that Mr. Byrnes and the Purchasing Parties had ample financial resources to complete the transaction. These assurances, Lensabl contends, were central to its decision to move forward.

¶ 6    Ultimately, the Purchasing Parties and Lensabl executed a detailed written agreement under which the Purchasing Parties would acquire a 49% interest in Lensabl for $28,990,000, with an option to purchase a majority stake within twelve months ("Transaction Agreement").[1]  RBH SPE signed as purchaser and RBH as guarantor.

¶ 7    The Transaction Agreement contemplated several closings, the first scheduled for September 22, 2023. Section 5.14 required RBH SPE to be adequately funded at each closing and made clear that the transaction was not conditioned on obtaining financing.[2] RBH, as guarantor, "unconditionally and irrevocably guarantee[d]" all obligations of RBH SPE and represented that it possessed "the financial capacity to pay and perform its obligations."[3]

¶ 8    Despite these representations, the initial closing date passed without payment. The Purchasing Parties requested more time to secure financing. Lensabl declared them in default but offered an extension to February 15, 2024. When that deadline also lapsed, Lensabl terminated the Agreement and sold its remaining assets to another buyer.

¶ 9    Lensabl filed this suit on July 7, 2025, asserting a range of theories against multiple defendants. The live pleading alleges:

---

[1] *See* 1st Am. Pet., Ex. A.
[2] *Id.* § 5.14.
[3] *Id.* § 7.8(a)–(b).

- breach of contract against RBH SPE, RBH, and Mr. Byrnes;

- "veil piercing under Delaware law" against the Byrnes Defendants;

- negligent misrepresentation against Coscolluela;

- principal/agent liability against Mr. Byrnes and RBH; and

- fraud against Coscolluela, RBH SPE, RBH, Mr. Byrnes, and Matthew Savoy (CFO of RBH).

¶ 10 Lensabl's veil-piercing theory alleges the LLCs were undercapitalized and insolvent, ignored corporate formalities, and served as a facade for Byrnes family business.

¶ 11 As to breach of contract against Mr. Byrnes individually, Lensabl asserts that "[d]uring negotiations, Robert Byrnes agreed with Lensabl, Inc. to transfer assets into the Purchasing Parties sufficient to perform under the Agreement." There are no other allegations describing any separate contract, written or oral, between Mr. Byrnes and Lensabl.

¶ 12 Lensabl's fraud claim rests on allegations that Mr. Byrnes represented that he and the Purchasing Parties had a net worth exceeding the obligations of the Agreement, that he knew this was false, and that he instructed an employee to execute the Agreement regardless.

¶ 13 The Byrnes Defendants now move to dismiss under Rule 91a, seeking dismissal of the veil-piercing theory and the breach-of-contract and fraud claims against Mr. Byrnes.

## II.    LEGAL STANDARD

¶ 14    Rule 91a allows dismissal of a cause of action that has "no basis in law or fact."[4] "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."[5] "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded."[6]

¶ 15    Procedurally, a Rule 91a motion must identify each challenged cause of action and explain why it has no basis in law, fact, or both.[7] A court may not consider evidence in ruling on a 91a motion; it must decide the motion based "solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59."[8]

¶ 16    Here, the Byrnes Defendants challenge the claims as having no basis in law. A cause of action has no basis in law "if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply."[9] Likewise, a petition that alleges too few facts to state a viable claim— or that merely recites legal elements without factual support—also fails to have a

---

[4] TEX. R. CIV. P. 91a.; *Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 555 (Tex. App.— Houston [14th Dist.] 2020, no pet.)
[5] TEX. R. CIV. P. 91a.1.
[6] *Id.*
[7] *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 606 (Tex. 2017) (citing TEX. R. CIV. P. 91a.2).
[8] TEX. R. CIV. P. 91a.6; *see also* TEX. R. CIV. P. 59 (permitting "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on" to be attached to and made part of pleadings).
[9] *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661 (Tex. 2023) (orig. proceeding).

basis in law.[10] Put differently, "inadequate content may justify dismissal because it does not provide fair notice of a legally cognizable claim for relief."[11]

¶ 17    Although Texas follows a liberal notice-pleading standard, that standard still requires factual substance.[12] A petition cannot survive dismissal merely by "giv[ing] notice of the claim and the relief sought."[13] It must provide fair notice of the essential factual allegations supporting that claim—allegations that, if proven, could support a judgment.[14] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15]

### III.    ANALYSIS

### A.    Texas law applies to the claims at issue.

¶ 18    As a threshold matter, the Court must determine which state's law governs the claims at issue. Although the Transaction Agreement contains a Delaware choice-of-law clause, Texas otherwise has the most significant relationship to the dispute.

---

[10] *Fiamma Statler, LP v. Challis*, 2020 WL 6334470, at *8, 12 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.) (citing several courts of appeals adopting similar standard).
[11] *Id.*; *accord Longhorn Creek Ltd. v. Gardens of Connemara Ltd.*, 686 S.W.3d 418, 426 (Tex. App.—Dallas 2024, pet. filed).
[12] *See* TEX. R. CIV. P. 45(b) (requiring pleading to at least give "fair notice to the opponent").
[13] *In re First Rsrv.*, 671 S.W.3d at 661–62 (internal quotation marks omitted).
[14] *Id.* at 662.
[15] *Smart v. Prime Mortg. & Escrow, LLC*, 659 S.W.3d 155, 161 (Tex. App.—El Paso 2022, pet. denied); *see also Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("Zheng's pleading contains merely a 'threadbare recital' of the elements of a fraudulent inducement claim without any alleged facts. Accordingly, the trial court did not err by determining the claim has no basis in law or fact.").

¶ 19   In general, Texas follows the principle of party autonomy: contracting parties may agree to be governed by the law of another state, so long as the chosen state bears a reasonable relationship to the transaction and applying its law does not contravene a fundamental policy of a state with a materially greater interest.[16]

¶ 20   Here, the parties to the Transaction Agreement included a choice-of-law clause dictating the application of Delaware law:[17]

> 9.2   Governing Law. This Agreement shall be governed by the internal law of the State of Delaware, without regard to conflict of law principles that would result in the application of any Law other than the Law of the State of Delaware.

By its plain language, however, the clause is narrow and governs only the interpretation and enforcement of "this Agreement."[18] Of the claims pleaded in this case, this would include only the breach-of-contract claim based directly on the Transaction Agreement itself and asserted against the signatories, RBH SPE and RBH.[19]

¶ 21   The critical question, then, is which law governs Lensabl's claims against Mr. Byrnes individually and its veil-piercing theory against all the Byrnes

---

[16] *Exxon Mobile Corp. v. Drenman*, 452 S.W.3d 319, 324–25 (Tex. 2014) (citing TEX. BUS. & COM. CODE § 1.301(a) and RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).
[17] 1st Am. Pet., Ex. A, § 9.2.
[18] *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (interpreting similar provision and holding, "This provision, by its terms, applies only to the interpretation and enforcement of the contractual agreement. It does not purport to encompass all disputes between the parties or to encompass tort claims.").
[19] *See id.*

Defendants. The Court agrees with the Byrnes Defendants that Texas law controls.[20]

Lensabl, for its part, concedes that Texas law governs its breach-of-contract claim against Mr. Byrnes[21] and, at oral argument, acknowledged that Texas law likewise governs veil piercing under Section 1.104 of the Texas Business Organizations Code.[22] This leaves only the question of which law applies to fraud.

¶ 22    For tort claims, Texas courts apply the "most significant relationship" test.[23] Under this test, a court must consider "which state's law has the most significant relationship to the particular substantive issue to be resolved."[24] On this record, that state is Texas. According to Lensabl's own pleadings:

- Mr. Byrnes and his representatives made the alleged misrepresentations in Texas;[25]

- the Purchasing Parties are Texas entities;[26]

- the Byrnes Defendants, except Jeff and Mysti Byrnes, are Texas residents;[27]

- Mr. Coscolluela traveled to Texas to make the specific representations giving rise to the claims in this suit;[28] and

---

[20] *See* Byrnes Defs.' Br. Regarding Choice of Law.
[21] *See* Lensabl, Inc.'s Briefing on Choice of Law.
[22] *See* Oct. 23, 2025 Tr. 15:8–16:7; *see also* TEX. BUS. ORGS. CODE § 101.114 (liability of LLC members).
[23] *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145.
[24] *Hughes*, 18 S.W.3d at 205 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–27 (5th Cir. 2003) (holding that choice-of-law provision stating "[the] Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" applied only to the construction of the contract and not fraud claims).
[25] 1st Am. Pet. ¶¶ 24–25, 68–70, 80–82.
[26] *Id.* ¶ 10.
[27] *Id.*
[28] *Id.* ¶¶ 10, 24–25.

- Mr. Savoy is a Texas resident.[29]

¶ 23  Delaware, by contrast, has no meaningful connection beyond Lensabl's place of incorporation. There are no allegations that any negotiations occurred in Delaware, that any misrepresentations were made there, or that any injury was sustained there. And while Delaware is Lensabl's state of incorporation, it is not its principal place of business. That appears to be in California.[30]

¶ 24  Accordingly, Texas law governs all claims at issue in this Motion.

**B.    The veil-piercing claim fails under Texas law.**

¶ 25  In Texas, members and managers of a limited liability company are generally shielded from personal liability for the company's debts and obligations.[31] This protection applies unless the company's governing documents provide otherwise—which Lensabl does not allege here.[32]

¶ 26  Instead, Lensabl relies on conclusory allegations patterned after Delaware veil-piercing principles, claiming the LLCs are inadequately capitalized, insolvent, failed to observe corporate formalities, and served merely as a facade for the family enterprise.

---

[29] *Id.* ¶ 20.
[30] *Id.* ¶ 12.
[31] TEX. BUS. ORGS. CODE § 101.114; *Kennebrew v. Harris*, 425 S.W.3d 588, 600 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).
[32] *Id.*

¶ 27   But as Lensabl now concedes, Texas law governs this issue. And under Texas law, the standard for disregarding the corporate form is substantially higher. Indeed, it is not entirely settled whether Texas even permits veil piercing for LLCs.[33] Yet even assuming the doctrine applies, Lensabl's pleadings fail to state a viable claim under Rule 91a. A cause of action has no basis in law "if it is barred by an established legal rule and the plaintiff has failed to plead facts demonstrating that the rule does not apply."[34]

¶ 28   That is precisely the case here. Under Texas Business Organizations Code Sections 101.002 and 21.223, a member or manager of an LLC may be held liable for a matter arising from a contractual obligation of an LLC *only* if that person "perpetrate[d] an actual fraud . . . primarily for the direct personal benefit" of the

---

[33] *See Key v. Richards*, No. 03–14–00116–CV, 2016 WL 240773, at *3 n.4 (Tex. App.—Austin Jan. 13, 2016, no pet.) (acknowledging that the legislature has broadly insulated LLC members from liability for an LLC's obligations, but refusing to find without clear direction from the Supreme Court that this insulation nullifies the longstanding common law establishing that corporate agents may be liable for an entity's liabilities based on the equitable principles of veil-piercing); *Rocklon, LLC v. Paris*, 2016 WL 6110911, at *3–4 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (mem. op.) ("Although the Texas Supreme Court has not definitively addressed this issue, Texas intermediate courts of appeal and other jurisdictions have applied to [LLCs] the same state law principles for piercing the corporate veil as they have applied to corporations."); *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that, despite LLC statute providing that members are not individually liable for obligations of LLC, "Texas courts and other jurisdictions[] have applied to LLCs the same state law principles for piercing the corporate veil that they have applied to corporations."); BYRON F. EGAN, EGAN ON ENTITIES: CORPORATIONS, PARTNERSHIPS AND LIMITED LIABILITY COMPANIES IN TEXAS § 5.9 (4th ed. 2023) ("Since the Tex. LLC Stats. deal expressly with the liability of Members and Managers for LLC obligations, the principles of 'piercing the corporate veil' should not apply to LLCs in Texas, although there are Texas Court of Appeals decisions to the contrary and the Supreme Court has not addressed the issue.").

[34] *In re First Rsrv.*, 671 S.W.3d at 661.

member or manager.[35] The Texas Supreme Court has made clear this statutory protection is exclusive and preempts any broader common-law theories of liability.[36]

¶ 29 Lensabl does not allege that any of the Byrnes Defendants—other than possibly Mr. Byrnes—committed actual fraud. Rather, it rests on conclusory allegations that the LLCs were not adequately capitalized and failed to observe corporate formalities. Those allegations are legally insufficient under Section 21.223. Indeed, the statute expressly provides that individual liability may not be imposed "on the basis of the failure . . . to observe any corporate formality."[37]

¶ 30 Nor does Lensabl allege that any Byrnes Defendant acted "primarily for [his or her] direct personal benefit." There is no factual allegation—let alone explanation—as to how any of the Byrnes Defendants stood to gain personally from the LLCs' alleged conduct or the decision not to move forward with the proposed acquisition.

¶ 31 In short, Lensabl pleaded a Delaware-style veil-piercing theory, only to later concede that Texas law applies. Faced with a 91a Motion, Lensabl could have amended its petition prior to the hearing to plead a Texas-law theory consistent with Section 21.223.[38] It chose not to. Because the pleadings do not satisfy the narrow

---

[35] TEX. BUS. ORGS. CODE § 21.223(a)(2), (b); *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 23 (Tex. App.—Texarkana 2012, no pet.).
[36] *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006).
[37] TEX. BUS. ORGS. CODE § 21.223(a)(3).
[38] *See* TEX. R. CIV. P. 91a.5 (permitting respondent to amend the challenged cause of action at least three days before the hearing).

standard for veil-piercing under Texas law, the Court grants the Motion as to this claim.

**C.    The breach-of-contract claim against Mr. Byrnes fails as a matter of law.**

¶ 32    The Court next considers whether Lensabl has adequately pleaded a breach-of-contract claim against Mr. Byrnes in his individual capacity. The Court concludes it has not.

¶ 33    To state a breach-of-contract claim under Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from that breach.[39]

¶ 34    Lensabl's petition contains only the following allegations in support of its breach-of-contract claim against Mr. Byrnes[40]:

---

[39] *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).
[40] 1st Am. Pet. ¶¶ 57–59.

C.     Breach of Contract Against Robert Byrnes

    57.     During negotiations, Robert Byrnes agreed with Lensabl, Inc. to transfer assets into the Purchasing Parties sufficient to perform under the Agreement.

    58.     As described above, Robert Byrnes failed to capitalize the Purchasing Parties as agreed.

    59.     Lensabl, Inc. was damaged as described herein as a direct result of Byrnes' failure to capitalize the Purchasing Parties as agreed.

¶ 35     These allegations are insufficient to establish the existence of a contract between Lensabl and Mr. Byrnes personally. To be clear, Lensabl does not allege that Mr. Byrnes was a party to the Transaction Agreement. In fact, elsewhere in the petition, Lensabl acknowledges that the only parties to the Transaction Agreement are the LLCs themselves—RBH and RBH SPE.[41] A review of the Agreement confirms this; Robert Byrnes is not a signatory.[42]

¶ 36     This leaves only the possibility that Lensabl is alleging some other, unidentified agreement. Yet the petition does not describe the supposed agreement's material terms, when or how it was formed, who the parties were, or what consideration supported it.

---

[41] *Id.* ¶ 27.
[42] 1st Am. Pet., Ex. A.

¶ 37   This omission is fatal to the claim. Under Rule 91a, a cause of action has no basis in law when it alleges too few facts to demonstrate a viable right to relief.[43] A plaintiff must plead the essential elements of its claim with enough factual detail that, if proven, would support a judgment.[44] Lensabl's petition does not meet this threshold.

¶ 38   Accordingly, the Court grants the Motion as to the breach-of-contract claim against Mr. Byrnes individually.

**D.   The fraud claim against Mr. Byrnes is adequately pleaded.**

¶ 39   The Court next addresses the final challenged claim—common-law fraud against Mr. Byrnes. After reviewing the pleadings, the Court concludes that Lensabl has adequately stated a claim.

¶ 40   To plead common-law fraud under Texas law, a plaintiff must allege: (1) the defendant made a false, material representation; (2) the defendant knew it was false or made it recklessly without knowledge of its truth; (3) the defendant intended that the plaintiff rely on the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered an injury as a result.[45]

¶ 41   Although Lensabl's factual allegations are concise, they do satisfy the minimum requirements for sufficiency. Lensabl alleges that:

---

[43] *Fiamma Statler*, 2020 WL 6334470, at *8 (citing several courts of appeals adopting similar standard).
[44] *In re First Rsrv.*, 671 S.W.3d at 661–62.
[45] *See Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

- Mr. Byrnes hired Ray Coscolluela to negotiate the acquisition of Lensabl;[46]

- Mr. Coscolluela represented that Mr. Byrnes and the LLCs were adequately capitalized to complete the acquisition;[47]

- Mr. Coscolluela acted "as an agent of Robert Byrnes";[48]

- Mr. Byrnes himself "made material representations to Lensabl, Inc. that the Purchasing Parties were adequately capitalized to perform under the Agreement";[49]

- when Matthew Savoy "alerted Robert Byrnes to the falsity of the representations in the Agreement," Mr. Byrnes nevertheless instructed him to sign the Agreement;[50] and

- once Lensabl entered into the Transaction Agreement, it was precluded from seeking out other deals.[51]

¶ 42   Taken as true, these allegations satisfy each element of fraud. Lensabl pleads a specific material misrepresentation—that Mr. Byrnes and the LLCs were adequately capitalized—and alleges that Mr. Byrnes knew the representation was false. It further alleges reliance, asserting that Lensabl entered into the Transaction Agreement based on those assurances, and that it suffered injury because doing so prevented it from pursuing other opportunities.

---

[46] 1st Am. Pet. ¶¶ 1, 23.
[47] *Id.* ¶¶ 2, 25.
[48] *Id.* ¶ 48.
[49] *Id.* ¶ 81.
[50] *Id.* ¶ 85.
[51] *Id.* ¶¶ 2, 25.

¶ 43 While the allegations are sparse, they are sufficient under Texas's liberal pleading standard to give fair notice of the claim and its factual basis. Accordingly, the Court denies the Motion as to the fraud claim against Mr. Byrnes.

## IV.    CONCLUSION

¶ 44 Consistent with this opinion, the Court **GRANTS IN PART** and **DENIES IN PART** the Byrnes Defendants' Motion to Dismiss. The veil-piercing theory against all Byrnes Defendants and the breach-of-contract claim against Mr. Byrnes are dismissed with prejudice. The common-law fraud claim against Mr. Byrnes remains pending.

IT IS SO ORDERED.

BRIAN STAGNER
Judge of the Texas Business Court,
Eighth Division

SIGNED: November 5, 2025